# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

**UNITED STATES OF AMERICA**                                      **PLAINTIFF**

**V.**                 **CASE NO. 4:19-cr-00578-DPM**

**ANTWANE NELSON**                                                **DEFENDANT**

## DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

The Defendant Antwane Nelson by and through his attorney Michael Kiel Kaiser of Lassiter & Cassinelli, hereby submits the following Motion to Suppress Physical Evidence:

### I.  Facts.

On June 21, 2017, Antwane Nelson signed a warrantless search waiver through the Arkansas Department of Community Corrections as part of his Arkansas state parole. The waiver states specifically:

> As a condition of my supervised parole or probation, I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of my person, place of residence, or motor vehicle at any time, day or night, whenever requested by the Arkansas Community Correction officer, or certified law enforcement officer.
> I understand that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that I am committing or have committed a criminal offense.
>
> Arkansas law code annotated § 16-93-106 requires this waiver to be signed by a person who is placed on supervised probation or is released on parole under this section as a condition of his or her supervised parole or probation.

Ark. Code Ann. § 16-93-106 is the statute that authorizes such search waivers, and it states:

**(a)**

> **(1)** A person who is placed on supervised probation or is released on parole under this chapter is required to agree to a waiver as a condition of his or her supervised probation or parole that allows any certified law enforcement officer or Division of Community Correction officer to conduct a warrantless search of his or her person, place of residence, or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or division officer.
>
> **(2)** A warrantless search that is based on a waiver required by this section shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offense.

**(b)**

> **(1)** A person who will be placed on supervised probation or parole and is required to agree to the waiver required by this section shall acknowledge and sign the waiver.
>
> **(2)** If the person fails to acknowledge and sign the waiver required by this section, he or she is ineligible to be placed on supervised probation or parole.

**(c)** As used in this section, "residence" includes a garage or outbuilding on the property of a residence.

On August 8, 2019, law enforcement officers with the GET-Rock Task Force conducted surveillance in the area of 1600 Booker Street in Little Rock, Arkansas, after allegedly receiving information regarding drug activity at the

address. Officers observed a man later determined to be Nelson sitting in the driver seat of a black Dodge Charger parked directly in front of 1600 Booker with the engine running. After about 20 minutes, a Ford Explorer pulled behind the Charger, and two female occupants began to unload groceries onto the front porch of the residence. Nelson exited the Charger and spoke with the two women.

Special Agent Joshua Hubbard then pulled behind the Explorer and made contact with Nelson. It is unclear whether Hubbard engaged his blue lights as the scant police reports do not make this clear, and as there is no audio-visual evidence associated with this alleged surveillance. According to Nelson, Hubbard pulled behind the Explorer in an un-marked unit, and engaged the flashing lights inside the grill of that car before exiting the vehicle and making contact with Nelson.

According to Hubbard, Nelson informed him that the Charger was not his but rather his mother's car. Hubbard asked for registration, but the officer's reports are unclear as to whether Nelson actually provided any registration. It is also unclear whether officers ran the license plates of the Charger—which they noted in reports to be 776XG— to determine whether it was registered, and if so, to whom.

Task Force Officer Nick Simmons then conducted a search of the Charger based on Nelson's search waiver, locating the alleged contraband for which Nelson stands charged in this case.

## II. Law Enforcement Lacked Probable Cause or Reasonable Suspicion to Seize Nelson in the First Place.

This Court's analysis begins with determining into which one of the three categories of police-citizen encounters this encounter falls. *See United States v. Poitier*, 818 F.2d 679, 681-82 (8th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). The Eighth Circuit Court of Appeals has noted,

> Supreme Court jurisprudence has placed police-citizen encounters into three tiers or categories: First, there are communications between officers and citizens that are consensual and involve no coercion or restraint of liberty. Such encounters are outside the scope of the Fourth Amendment. Second, there are the so-called *Terry*-type stops. These are brief, minimally intrusive seizures but which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause.

*Id.* at 682.

Not every encounter between a police officer and a citizen constitutes an unreasonable seizure under the Fourth Amendment:

> Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.

*Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and

personal security of individuals.'" *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (quoting *United States v. Martinez-Fuente*, 428 U.S. 543, 554 (1976)).

A traffic stop constitutes a seizure under the Fourth Amendment. *See United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). A traffic stop is reasonable where the police have probable cause to believe that a traffic violation occurred, *Whren v. United States*, 517 U.S. 806, 810 (1996), and any traffic violation provides probable cause for a traffic stop. *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994).

In order to determine whether a particular encounter constitutes a Fourth Amendment detention or seizure, the test is whether, "taking into account all the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chestnut*, 486 U.S. 567, 569 (1988)). Examples of things that would indicate a seizure, "even where the person did not attempt to leave, would be the threatening presence of several officers . . . some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554; *see also United States v. Clark*, 743 F.2d 1255-1258-59 (8th Cir. 1984). Activation of emergency lights can be a show of authority sufficient to show a

seizure under the Fourth Amendment. *See United States v. Barry*, 394 F.3d 1070, 1075 (8th Cir. 2005).

Here, officers unquestionably seized Nelson as this was in essence a traffic stop. At the very least, this was a *Terry* stop given that law enforcement pulled in behind the Charger and the Explorer and engaged its flashing lights. This show of authority was sufficient to make this encounter a seizure for purposes of the Fourth Amendment. Further, while it is unclear precisely how many were present, the reports make clear that there were at least two officers and likely more as part of a GET-Rock Task Force surveillance operation. Further, officers indicated that compliance with their requests might be compelled by demanding to see the Charger's registration.

The fact that Nelson was later discovered to have a search waiver on file is immaterial to this initial calculation. Even though officers do not need reasonable suspicion or probable cause to conduct a search pursuant to a search waiver based on its express terms, they do need reasonable suspicion or probable cause to conduct the type of seizure that later led to the waiver search in this case.

Law enforcement thus required reasonable suspicion to conduct such a seizure. However, Officers lacked any reasonable suspicion or probable cause sufficient to permit such a seizure. Nothing in the threadbare discovery materials provided to defense counsel suggests that officers had probable cause that Nelson

had recently committed a traffic violation, or that they had reasonable suspicion that Nelson was committing any particular crime. Rather, officers had mere information of drug activity at a particular address, and Nelson happened to be sitting in a car in front of that address. There was not even any previous information that Nelson specifically was involved in the alleged drug activity at that address.

Officers illegally seized Nelson accordingly. Officers conducted a *Terry* stop in the absence of any reasonable suspicion of a crime or probable cause of any traffic violation. All evidence seized as a result of this seizure must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

### III. Nelson Did Not Consent to the Warrantless Search in Accordance with His Waiver Because Law Enforcement Never Requested to Search His Vehicle as Required by the Express Terms of the Waiver.

Nelson's waiver states the parolee must allow a warrantless search "whenever requested." However, nothing in the discovery materials provided to defense counsel suggests that officers requested to search the Charger. Rather, officers noted merely that they conducted the search "based on" Nelson's waiver. According to Nelson, not one officer ever requested to search the Charger. The search was thus invalid under the plain language of the waiver itself.

When confronted with similar language in a warrantless search waiver, the Court of Appeals of Idaho concluded that the plain language of the waiver essentially requires the officer to provide the probationer with notice of the search:

> [A] probation condition that requires a probationer to submit to a search "at the request of" an officer requires that the probationer be informed of an officer's intent to conduct an impending search . . . *we must keep in mind that probationers' expectation of privacy is merely diminished, not obliterated*. In addition, to adopt the state's interpretation of the term would be to essentially ignore the plain language of the probation condition . . . .

*State v. Turek*, 250 P.3d 796, 802 (2011) (emphases added). Law enforcement violated this notice provision by failing to request to search in this case.

The language of the condition does not grant law enforcement open-ended authorization to search a parolee or probationer's residence. Rather, the condition is worded so as to impose an obligation upon the parolee to submit to a search whenever requested, and thus the law enforcement officer's authority to search is premised on the parolee receiving notice of the intended search. *See Turek*, 250 P.3d at 802. Conceivably, a parolee could deny consent to search despite having signed a warrantless search waiver, and law enforcement would not be permitted to search. The parolee would surely face revocation, but there consent is still a requirement in order for law enforcement to search pursuant to a search waiver.

Any consent purportedly granted by the waiver was invalid accordingly. All evidence seized must be suppressed as fruit of the poisonous tree.

### IV. <u>This Was an Invalid Search Pursuant to Nelson's Waiver Because Law Enforcement Lacked Reasonable Suspicion That the Vehicle at Issue was Not Nelson's Motor Vehicle for Purposes of His Search Waiver.</u>

Prior to the search of the Charger at issue, officers lacked reasonable suspicion or probable cause to believe that the Charger at issue was Nelson's "motor vehicle" for purposes of his search waiver. *See United States v. Mayer*, 560 F.3d 948 (9th Cir. 2009) ("Before law enforcement officers may conduct a warrantless probation search, however, they must also have probable cause to believe that the probationer actually lives at the residence searched.").

The waiver authorizes only searches of Nelson's "motor vehicle." This does not mean that the waiver applies to any vehicle that Nelson may happen to be present within. Had the Arkansas General Assembly intended to allow the waiver to cover any car the parolee happened to be within, it would have stated so explicitly in the waiver statute.

Nelson believes the waiver and the statute authorizing it at Ark. Code Ann. § 16-93-106 are quite clear. However, should the United States argue that the statute is ambiguous on this point, it should be noted that the rule of lenity requires that doubts be resolved in favor of a defendant where there is any ambiguity in a criminal statute. *See United States v. Bass*, 404 U.S. 336, 348 (1971).

Here, there was no proof whatsoever that the Charger belonged to Nelson. Merely sitting inside a car does not create a possessory or ownership interest.

Nelson made clear that the car was his mother's rather than his, and officers failed to confirm the car's registration to determine one way or the other before entering to search. At the time that officers searched the Charger, they did not have any information that the car belonged to Nelson beyond seeing him sitting inside it a few minutes prior.

The search was invalid pursuant to the search waiver itself, and any evidence seized during said search must be suppressed accordingly.

WHEREFORE, the Defendant Antwane Nelson respectfully requests that this Court enter an order granting his motion to suppress physical evidence, or alternatively that this Court hold a hearing on this motion.

> Respectfully submitted,
>
> Michael Kiel Kaiser
> MICHAEL KIEL KAISER (AR2015001)
> Attorney for Defendant
> Lassiter & Cassinelli
> 813 W 3rd Street
> Little Rock, AR 72201
> (501) 370-9300
> Email: Michael@LCArkLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 20, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to AUSA Edward O. Walker (Edward.O.Walker@USDOJ.gov)

> Michael Kiel Kaiser
> MICHAEL KIEL KAISER (AR2015001)